Thank you, Your Honor. If I may, can I reserve two minutes for a rebuttal? You may. I'll try to watch the clock, but you also have a clock there as well. Right. And I know eight minutes goes by really fast. You're right. I have raised in the briefs one of the principal issues in this case, which is whether a loan servicer owes a duty of care to the borrower while evaluating, considering, and deciding the borrower's loan modification application. I'm not going to get into much detail into various factors that go into the analysis. I know the Court is aware that the California Supreme Court is considering a narrower version of this issue in the Sheen v. Wells Fargo case. And since federal judges don't sit to be final deciders of state law, I'm sure the Court is curious what's going on with that case. It has been fully briefed. It is not yet set for argument. The California Supreme Court hasn't announced its argument schedule for April, May, or June. I had hoped it would be heard in one of those months. I'm not so sure now. But that is the status of the case. On other issues, the District Court granted the 12B6 motion as to the Homeowner's Bill of Rights claims and the negligence claims and the RESPA claims, principally because it did not feel Ms. Marcus had pleaded a complete loan application. And I would just point the Court to paragraph 11 of the Third Amendment complaint on page 517 of the record, where Ms. Marcus alleges in detail that she was told by Nation Star's counsel in a prior lawsuit that it was complete, that you didn't need any more documents. So I think the District Court was required to accept that allegation as true. Well, I don't think you've pledged that Nation Star informed your client that it was complete. It seems that you've pledged that your client believed the application was complete. Those are different things. True enough, Your Honor, but let me read from lines 9 through 13 of the Third Amendment complaint on page 517 of the record. Specifically on August 11, 2016, S. Monique Scrimmager of Green and Hall, Nation Star's counsel, informed Plaintiff of the documents she needed to submit in order for her application to be complete. The plaintiff submitted those. And then Ms. Scrimmager, again, Nation Star's counsel, sent an email confirming that the application was in review, which meant that the plaintiff's application wasn't complete. They don't review uncompleted applications. They ask for more documents. So this, giving a reasonable reading to that allegation, says that she was told that they didn't need any more documents and therefore, under a common sense interpretation of that allegation, the application was complete. Right, but then in paragraph 37, there's an acknowledgment that there was a later correspondence that same day saying it was not complete. Well, then we set up a disputed issue of fact. Obviously, Nation Star will contend it was not complete. Ms. Marcus has alleged it is complete. And it's essentially a disputed issue of fact. It's not disputed that they informed you that it was not complete. It seems that it's disputed that you, whether you believe or your client believes that was bona fide, I guess. Right. What facts have you pled to suggest that it was not bona fide? We pled the earlier email that says they didn't need any further documentation. We pled throughout the complaint that they were not acting in good faith in considering the loan modification application. I don't think it is proper under the dual tracking statute in California to essentially say we have to take the servicer's word for it. Again, if the borrower disputes an issue with the servicer, disputes facts with the servicer, then that sets up maybe a motion for summary judgment, maybe a trial. But it certainly is not enough to get by in a 12B6 motion. Is there any allegation in the complaint as to what your client might have done after receiving the second piece of correspondence informing her that at least Nationwide believed it was not complete? I don't believe so, Your Honor, because she believed it was complete. I have a question about the single point of contact. It seems to me that you need to do more than simply allege what I think is a legal conclusion. And I know you've said, well, you can't really allege a negative. Well, the question is, could she allege they provided no point of contact? Could they allege she could have alleged I was in touch with many people, but there was no designated single point of contact? There's a whole host of things that would go beyond. And so I am concerned that what you pled was a pretty bare-bones legal conclusion and would appreciate your comment on that. It is hard to plead a negative. Not when there's facts. I mean, it's disputed. It's disputed as to whether there was a single point of contact. But she certainly could probably be filled out a bit to say that, as you just pointed out, Your Honor, a couple of more detailed allegations. You know, remember on a 12B6 motion on appeal, it is a question, you know, it's a question of whether the complaint can be saved by any conceivable amendment. Well, you know, we could provide those details in an amended complaint. Weren't you given several opportunities to do that here? Only one. Let me explain the odd procedural history of this. The original complaint was balanced by the district court judge properly because, I think on the district court's own review, that it didn't allege subject matter jurisdiction. And the plaintiff, Ms. Marcus, was told to file an amended complaint alleging subject matter jurisdiction. She made the same mistake on the first amended complaint, not alleging subject matter jurisdiction. The district court caught it and said, you know, allege subject matter jurisdiction. And on the second amended complaint, she did allege subject matter jurisdiction, federal question jurisdiction. And that's when the first 12B6 motion was filed. And that's when the district court got to the merits and gave her leave to amend once on various claims. And she then filed the third amended complaint, which was her response to that. So she really only had the one opportunity to do it. Well, did you ask for a further opportunity? I believe in our opposition to the 12B6 on the third amended complaint we did. You may want to save the remainder of your time. I'd like to do that, Your Honor. Thank you. Mr. Deek. Good morning, Your Honors. May it please the court. My name is Kyle Deek, and I represent the defendant and the appellee in this case. And he's just our mortgage. Your Honors, I'd like to obviously at the court's discretion touch on two issues this morning that I think are symbolic of the lack of factual basis sufficient to allow the claims in the case to go forward as the district court recognized pursuant to the standard of review on a 12B6 under Twombly and Iqbal on the progeny. And those issues are briefly this, which is one, the first issue of a fundamental contract formation, which is with regard to the contract claims in the case, what is the contract or is there sufficiently pled contract formation? Well, I should address the issue we were discussing earlier, which was, has she, why has she not sufficiently pled the completed application? I will, Your Honor, absolutely, because that issue is frankly one that the court need to touch on regardless of the contract. And the reason is because the only allegation in the complaint I think is Your Honor touched on is it concludes your allegation that they submitted a completed loan modification. The allegation that counsel points to on page five. That's not totally correct, right? She says the lawyer said, here's what you need. She said, I gave all of the documents the lawyer said she needed. And then the lawyer says it's in review and the plaintiff says, and that means it was complete. So I guess one question I had was, is the lawyer's statement that you've submitted all the documents I've asked for, it's now in review. Can that plausibly interpreted as meaning that it was complete or is that not possible? I don't think that's plausible for a number of reasons, Your Honor. First of all, if we look specifically, we're at a 12 v. 6, so we're confined to the four corners of the complaint and have to accept the allegations as pled as true. So we also have to look at what the allegations are as pled. At no point is it pled that the lawyer said the application is complete. The only thing that is pled is that the attorney said that the application, and this is their words, was in review. So opposing counsel says that when the application is in review, that all of the necessary documents have been provided because NationStar doesn't or a lender doesn't review an incomplete application. And so is that a plausible interpretation? That's the opposing counsel's interpretation. I don't think it is, Your Honor, and I think the case that memorializes that is the Lineman case that the district court cited, Lineman v. NationStar Mortgage. And I think it's very important to see factually what happened in that case because I think it's illustrative of the point that Your Honor makes. In that case, the plaintiff went on to the website. It was actually NationStar that was the defendant in that case. Went on to NationStar website, saw a list of materials that was published on the website that they claimed to be the materials needed to submit a complete loan modification application. In that case, they alleged that they then submitted those materials to NationStar. And on those allegations, they said, we submitted a complete loan modification. You identified for us the materials that were required. We submitted them. They actually went further and detailed to the court in that case what actually was submitted to try to buttress from a factual standpoint, from a plausibility standpoint, that they had submitted a complete loan modification application. And did the owner in that case say that the loan modification application was in review? I'm sorry, Your Honor. I couldn't hear you on that. In that case, the one you're citing, Lineman, state to the applicant that the applicant's application was in review? I'm not sure that the court touched on that and had that terminology. But what the court did touch on in that was that if we look at the statute that's issued under the Homeowner Bill of Rights, they said whether or not an application is complete falls within the purview of the servicer. That's what actually the statute specifically says. And they said in looking at the totality of the facts in that case, as in this case, we not only look at what the allegations were with regard to the materials that were submitted, we also look at the information with regard to what was told back to the borrower. In that case, as in this case, we have correspondence that's been affirmatively pled in this case back to the borrower saying your application is not complete. So the borrower says that that was in bad faith, that Asian Star would send out such boilerplate letters so that it did not have to comply with the requirement that cease foreclosure activities once an application is complete. What do we do with that allegation? Well, I don't think you have to accept that allegation as a conclusory allegation without any underlying fundamental factual support. That suffers from the same problems that the allegation that we submitted a complete loan modification out allegation suffers from the case, which is as the court. This is not a new issue. The court recognized the failings of this claim when it dismissed the Second Amendment complaint. If we look at page 25 of the record, that is the district court's opinion in dismissing the Second Amendment. And when the court dismissed the Second Amendment complaint, the court gave some guidance. Frankly, the council and said, you've not provided us with anything to suggest other than they complied with the statute and told you that the application was complete. You have not provided us with the materials that were sent in. You've not even told us what you sent in to allege that the application is complete. So as far from the facts in the Lyman case where you had evidence before the court from a factual standpoint of what was sent in, what was called for council in this case, in spite of the fact that the court specifically noted that in the opinion dismissing the Second Amendment. In the Third Amendment complaint hasn't even pled from a fundamental factual standpoint what they sent in, let alone that what they sent in was compliant with all of the requirements. If we take it a step further, Your Honor, under that analysis, again, the case law, the statute says that you have to judge the completeness of the application, not from the purview of the borrower, but from the purview of the servicer. And that's important because the servicer is the one who determines whether or not the application is complete and whether or not all of the material required from the investor, that is the loan holder at the end of the day, has been provided. There is not one form packet that is reviewed by all investors. Again, the Lyman court touched on this and the reasoning behind why at the end of the day the decision is with the servicer as to whether or not a complete loan modification application is submitted. The reference in paragraph 11 of the complaint to it being on review, the application being on review, is that a term of art from the regs of the statute or is that just an allegation based on essentially what the plaintiff is claiming here? I think, Your Honor, I think it's an allegation based upon what plaintiff is claiming. I do not know it to be a specific term of art with a specific meaning under the regs or any type of definitional approach in this instance. And candidly, in review could mean we are reviewing to see whether or not the application is in fact complete at that point in time. We don't know, frankly, and on the paper thin, the razor thin factual recitations in this case, we don't have before the court, we don't have from a factual standpoint what I would submit under the prevailing case law is necessary to raise to the level of sufficiency of plausible sufficiency under Twombly or Iqbal as the district court found even after plaintiff was given a number of opportunities to go ahead and plead the case. I will take certain issue with the fact that counsel says this is our only technically second attempt to plead claims. If we look at the history, I mean, representative of the breach of contract claim, breach of contract claim essentially comes out of an alleged settlement agreement from a prior state court action. So even before we got to the federal court action, we've got, and frankly, there's a prior federal court action as well. So in this case, we're on our third amended complaint, our fourth attempt to plead in this case. We've got prior actions that were filed. And I think that's all representative of the fact that if the facts were there, if they had sufficient factual basis, they've had more than a sufficient opportunity to plead it. They've not told the court fundamentally what was submitted, how it was submitted, let alone that all of that was the required material at the end of the day, they could have attacked. They've not done any of this. And so for those reasons, your honor, we'd ask that you affirm the decision of the district court in dismissing this case with prejudice. Thank you, your honors. Happy to answer any questions the court might have. It appears no further questions. Thank you. Thank you, your honor. Antonini, you have some rebuttal time. I have a minute. I say, okay, let us go back to paragraph 11 of the third amendment complaint. Again, page 517 of the record. Now, how did this become complete? Well, according to lines nine through 14, NationStar through its counsel in the prior lawsuit asked for certain documents. And those on August 11th, 2016, plaintiffs submitted those documents to NationStar and then was told in an email that the application was in review. Now, in review is not a technical term. I think counsel and I both agree on that point. But it is subject to rules of interpretation and common sense interpretation. In review means they have everything they want. Can I ask you on paragraph 37, you alleged that when your client got the second email that was essentially regarded as, you know, a sham or in bad faith. Are there any other allegations in the complaint outside of paragraph 37 that support that? Uh, let me see. There are allegations that NationStar never intended to consider the loan modification application in bad faith. With respect to the specific practice of sending out a second letter routinely, even though allegedly NationStar knew that the application was already complete. I think 37 is that is it your honor. But again, you know, if you look at again lines 26 to 28 on the page 530 lines one through five essentially says it was a sham. It was a sham to make sure that NationStar didn't have to comply with its obligations and and it didn't have to ever say that a application is complete. And one other point before I finish this idea that the services view alone controls, I think is contrary to California law and contrary to the policy behind both RESPA and the homeowners bill of rights in the sense that those are pro consumer pro borrower statutes. And they should be construed as such. And that means that the servicers state of mind should not be controlling, particularly when the servicer is not acting in good faith as engaging in sham activities as is alleged in paragraph 37. Thank you. I'd like to thank both counsel for your arguments this morning. The case of Marcus versus Nation Mortgage Company or LLC is submitted.
judges: McKeown, Ikuta, Bress